IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY GWIAZDOWSKI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF CHESTER | : | No. 2:08-cv-04463 |

Legrome D. Davis, J                                         October 19, 2009

<u>MEMORANDUM</u>

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Mary Gwiazdowski commenced this class action against Defendant Chester

County following incidents that occurred while Plaintiff was detained at Chester County Prison

in West Chester, Pennsylvania ("Chester Prison") on September 13, 2007, for misdemeanor

charges of driving under the influence ("DUI") and traffic violations.  Plaintiff claims that she

and others similarly situated were subjected to unconstitutional strip searches upon entry into

Chester Prison.  Defendant Chester County is "responsible for enacting uniform policies and

overseeing the County Jail."[1]  (Compl. ¶ 7.)

A.    <u>Facts relating to Plaintiff's Detention and Alleged Strip Searches</u>

Plaintiff was transferred to Chester Prison on September 13, 2007 following a brief

detention at Riverside Correctional Facility in Philadelphia, Pennsylvania ("Riverside") for

misdemeanor and summary charges of DUI, fleeing and reckless driving.  (Compl. ¶ 28.)  Upon

_____

[1]    In this Order, "Defendant" refers to Chester County in its capacity as supervisor
of Chester County Prison.

1

entry to Chester Prison, Plaintiff proceeded through intake questioning and paperwork and was

pat down by a correctional officer.  (Pl.'s Mot. Certify Class, Ex. A Pl.'s Dep. 85:10-16, Mar. 12,

2009.)  Plaintiff alleges that she was then subjected to two strip searches, a delousing spray

procedure and a cavity search.  (Hr'g Tr. 8:9, Aug. 5, 2009.)

Plaintiff was taken to a showering area where she was required to submit to Defendant's

delousing procedure, during which Plaintiff removed all of her clothing, including

undergarments, and an inspection officer, Donna Jennings ("Jennings"), sprayed Plaintiff with

Lysol.  (Pl.'s Dep. 86:2-3; Hr'g Tr. 15:22.)  When Plaintiff undressed, Jennings noticed bruises

on Plaintiff's body, and Plaintiff explained that she was assaulted by inmates at Riverside.  (Pl.'s

Dep. 12:7-14; Def.'s Resp., Ex. 3 Chester County Prison Incident Report 2 (hereinafter "Incident

Report").)[2]  According to Plaintiff, Jennings first sprayed her hair, then her underarms, and then

her "private areas."  (Pl.'s Dep. 35:15-16, 27:20.)  Before beginning the process, Jennings

advised Plaintiff to "hold [her] breath because of the spray being so cold."  (Id. at 61:4.)  Plaintiff

recalled that she asked Jennings, "how come do I need to get sprayed down," and Jennings

replied, "[b]ecause of lice and other things, that it's like a disinfectant for people so you don't

spread stuff."  (Id. at 62:25.)  Following the delousing procedure, Plaintiff showered and was

then taken to a holding cell.  (Id. at 28:24, 29:1.)

Plaintiff asserts that while she was being deloused, she was also strip searched.[3]  (Compl.

---

[2]    The Incident Report, written by Officer Donna Jennings on September 17, 2008, details three different times when Plaintiff was detained at Chester Prison: September 13, 2007, November 11, 2007, and September 17, 2008.  Because Plaintiff's allegations in this case focus on the September 13, 2007 incident, we are only addressing the details of that detention.

[3]    Defendant's delousing policy and alleged visual strip search policy are discussed in detail in Section I.B, infra, of this Order.

¶ 1.)  Jennings never touched Plaintiff but Plaintiff alleged that she was "forced to bend over and spread the lobes of her buttocks."  (Id. at ¶ 28.)  When asked to describe "specifically where they search[ed] you when you're completely nude," Plaintiff responded, "[t]hey just mainly[,] they are looking at you.  They just check you and, like, you just have to spread open to make sure there's nothing there . . . Your privates, under your arms and hair.  And your mouth." (Pl.'s Dep. 87:6-16.)  However, both Officer Jennings and Major D. Scott Graham, an officer at Chester Prison, stated that Plaintiff was not strip searched.  (Pl.'s Mot. Certify Class, Ex. D Dep. of Donna Jennings 82:6, March 4, 2009; Id. at Ex. E Dep. of Major D. Scott Graham 130:2, March 3, 2009.)  Jennings also wrote in the Incident Report, "[A]t no time is a female asked to squat and cough or spread their butt cheeks during an intake process."  (Incident Report 3.)

     B.    <u>Defendant's Policies and Procedures</u>

Defendant admits to having a uniform delousing policy.  Defendant has a written policy of "delous[ing] every new committal providing the individual is not pregnant or has open sores."[4] (Pl.'s Mot. Certify Class, Ex. B Chester County Prison, Policies and Procedures: Delousing of New Commitments.)[5]  The purpose of the policy is to "reduce the chances of lice, crabs and other infectious things to be introduced to the facility."  (Id.)  After completing the intake paperwork, an inmate is taken to the "appropriate shower area" for the delousing procedure.  (Id. at ¶ 1.)  The inmate must remove his/her clothes and place them in the clothing bag assigned to him/her. (Graham Dep. 42:24.)  An identification officer "will perform a visual inspection of the inmate's

---

[4]    Defendant's policy is dated June 3, 2003, but Defendant had substantially the same policy in place since at least 1992.  (Graham Dep. 69:1.)

[5]    This document has also been submitted with Defendant's Response as Exhibit 1.

body to ensure there are no open wounds or sores," (Policies and Procedures: Delousing of New Commitments ¶ 3) and will also ask the inmate if he/she has any open wounds or sores, (Graham Dep. 43:2-3.) If the officer detects no open wounds or sores, the inmate is "directed to close his/her eyes and hold up his/her arms," (Graham Dep. 115:12-14,) and the officer proceeds to spray the inmate's entire body, both the back and front of the body, with Lysol. (Hr'g Tr. 15:22.) The officer sprays the inmate's "private part areas" during this procedure because "that's where body lice, crabs, that's where they harvest." (Jennings Dep. 67:3.) When the spraying is complete, the inmate is directed to shower and dress in the issued inmate clothing. (Policies and Procedures: Delousing of New Commitments ¶ 8.)

Plaintiff also alleges that Defendant has a "written and/or *de facto* policy, custom or practice" of conducting suspicionless visual cavity searches of all detainees. (Compl. ¶ 25.) Plaintiff interviewed a former identification officer of Chester Prison, Benjamin Herstein, who stated that every inmate is "strip-searched and then deloused." (Pl. Mot. Certify Class, Ex. C Benjamin Herstein Interview 2, Mar. 6, 2009.) Herstein described the search as a "visual" search, where the officer wants the detainee to "shake their hair out . . . bend over, cough, make sure there's nothing up in the, I guess, anal cavity. Lift their scrotum . . . Check their ears, check their mouth." (Id. at 3.) When asked whether searching was Chester Prison's policy, however, Herstein explained that he was "never given any, you know, I.D. policies or book saying 'this is what has to be followed,'" and "really [didn't] know if it was protocol." (Id. at 3.) Herstein followed what was told to him by his training officer. (Id. at 3.)

Defendant denies that it has a blanket visual strip search policy, and provides a copy of its policies and procedures for pat-downs and searches in support thereof. (Def. Resp., Ex. 2

Policies and Procedures: Inmate Pat-Down and Strip Search Protocol.)  Specifically, the document describes searches of persons detained on misdemeanor charges as follows:

> "No person . . . arrested on a misdemeanor charge or a felony charge not involving violence, weapons or controlled substance, shall be subjected to a strip search unless the Chester County Prison Employee has a reasonable belief that the person is concealing a controlled substance or weapon . . .."

(Id. at ¶ 5.)  This policy was set forth in writing for the first time on March 10, 2008, but Defendant alleges that the same policy was in place prior to March 2008.  (Def. Resp. 4-5.) Jennings and Grahams' depositions further support this position.  Jennings explained that a detainee proceeding through the intake process is strip searched "only if it is approved through a supervisor with the fact that contraband could be placed in an area that cannot be seen with clothing on."  (Jennings Dep. 59:3.)  Similarly, Graham stated that there were only two instances in which a detainee would be strip searched during intake: if the detainee attempted to escape or was suspected of having weapons on him during transport, or if contraband was found during the initial pat down search.  (Graham Dep. 44:15, 45:4.)

     C.    <u>Plaintiff's Class Action Allegations</u>

     Plaintiff alleges that the delousing and strip search procedures described in the preceding paragraphs were conducted pursuant to Defendant's "written and/or *de facto* polic[ies], custom[s] or practice[s]" of "strip searching all individuals placed into the custody of the Jail . . . without any requirement of reasonable suspicion, or indeed suspicion of any sort."  (Compl. ¶ 25.) According to Plaintiff, "[p]ursuant to [these] written and/or *de facto* polic[ies], each member of the Class, including every named Plaintiff, was the victim of a routine strip search upon their entry into the Chester County Prison System."  (<u>Id.</u> at ¶ 26.)

D.    Procedural History

Plaintiff commenced this action on September 12, 2008 against Defendant on behalf of herself and a "class of thousands of others" who were allegedly unconstitutionally strip searched during intake at Chester Prison pursuant to Defendant's policies.  Plaintiff seeks monetary damages for herself and for each member of the proposed class for violations of 42 U.S.C. § 1983, a declaration that Defendant's policies are unconstitutional, and preliminary and permanent injunctions enjoining Defendant from engaging in the allegedly unconstitutional practices. Plaintiff now moves for this Court to certify a class consisting of the following members:

> All persons who have been or will be placed into the custody of the Chester County Prison after being detained for misdemeanors, summary offenses, violations of parole, traffic infractions, civil commitments, or other similar charges and/or crimes and were or will be strip searched upon their transfer and/or entry into Chester County Prison pursuant to the policy, custom, and practice of the Chester County Prison.

(Pl.'s Mot. Certify Class 1.)  Plaintiff's class is dated from September 12, 2006 until the present. (Id. at 5 n.7.)  Following briefing by both parties, this Court conducted a hearing on August 5, 2009 on the matter of class certification.  For the reasons stated herein, this Court grants Plaintiff's motion to certify the class.

II.    LEGAL STANDARD

To obtain class certification under Rule 23, plaintiffs must establish "that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met."  Stanford v. Foamex L.P., -- F.Supp.2d --, 2009 WL 3075390, at *4 (E.D. Pa. Sept. 24, 2009) (quoting Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994)).  Rule 23(a) requires a showing of: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. See Fed. R. Civ. P. 23(a); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).  If these requirements are satisfied,

6

the court must also find that the class action is maintainable under any one of the three provisions of Rule 23(b).  See Fed. R. Civ. Pro. 23(b); Amchem Prods., Inc., 521 U.S. at 614.  Plaintiff here seeks certification under Rule 23(b)(2) and 23(b)(3).  Rule 23(b)(2) requires a finding that injunctive relief is proper for the class as a whole, and Rule 23(b)(3) requires a finding that common questions of law or fact predominate over individual questions and that a class action is superior to other methods for adjudicating the matter.  Fed. R. Civ. P. 23(b)(2), (3).

Class certification under Federal Rule of Civil Procedure 23 is proper "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2009).  A district court must "consider carefully" all relevant evidence and arguments presented by the parties, and "must make whatever factual and legal inquiries are necessary."  Id. at 307, 320; see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166, 167 (3d Cir. 2001) ("A class certification decision requires a thorough examination of the factual and legal allegations.").  The decision to certify requires "findings by the court" that the requisites are satisfied; a "threshold showing" by a party that the elements of Rule 23 are met is not sufficient.  In re Hydrogen Peroxide, 552 F.3d at 307.  "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence."  Id. at 320.  In addition, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits."  Id. at 307; see also McDonough v. Toys "R" Us, Inc., -- F. Supp. 2d --, 2009 WL 2055168, at *7 (E.D. Pa. July 15, 2009).  The district court's findings for the purpose of class certification are conclusive for this inquiry, but they "do not bind the fact-finder on the merits."  In re Hydrogen Peroxide, 552 F.3d  at 318.

III.    DISCUSSION

    A.    <u>Class Definition</u>

Before examining the elements of Rule 23, we find it necessary to address a factual and legal dispute between the parties that affects the definition of Plaintiff's proposed class.  A district court has discretion to modify a class definition.  <u>See</u> <u>Rendler v. Gambone Bros. Dev. Co.</u>, 182 F.R.D. 152, 160 (E.D. Pa. 1998).  Plaintiff defines the class as "[A]ll persons . . . detained for misdemeanors . . . or other similar charges and/or crimes and were or will be strip searched upon their transfer and/or entry into Chester County . . . ."  (Pl. Mot. Certify Class 1).  Plaintiff alleges that Defendant has two strip search policies: a written delousing procedure and a policy, custom, or practice of conducting suspicionless visual cavity searches.  (Compl. ¶ 25.)  Defendant denies that it has a visual search policy, custom, or practice, and argues that its uniform delousing policy is not a strip search, and therefore cannot support certification.  (Def.'s Resp. 8.)  After conducting a "rigorous analysis" of all relevant evidence and arguments, this Court finds that Defendant's delousing policy qualifies as a strip search, but that there is insufficient evidence to find that Defendant had a visual search policy.  <u>See</u> <u>In re Hydrogen Peroxide</u>, 552 F.3d at 318.  Therefore, this Court limits the definition of "strip search" in Plaintiff's proposed class to include only the delousing policy.

Plaintiff failed to provide sufficient evidence to demonstrate that Defendant has a blanket visual search policy.  Plaintiff relies solely on statements made by former Chester Prison Officer Herstein to support her allegations.  Herstein explained that it was his practice to visually strip search and delouse every individual during intake,  (Herstein Interview 3); however, he stated that he was "never given any . . . I.D. policies or book saying 'this is what has to be followed,'"

8

and that he "[didn't] really know if it was protocol,"  (Id. at 4).  Herstein's practice contradicts Defendant's visual strip search policy during the class period, which was memorialized in writing on March 10, 2008.[6]  (Jennings Dep. 98:10; Graham Dep. 55:3.)  The policy requires a finding of "reasonable belief" that a person arrested on a misdemeanor or similar charge is concealing contraband before strip searching the person, and requires approval from a supervisor before any strip search is conducted.  (Policies and Procedures: Inmate Pat-Down and Strip Search Protocol ¶¶ 5, 6.)  Plaintiff provides no additional evidence to support Herstein's account, which suggests that his was an individualized practice. Thus, Plaintiff fails to meet her burden of demonstrating, by a preponderance of the evidence, that Defendant had or has a cavity strip search policy.[7]

On the other hand, we find sufficient evidence to support a finding that Defendant's delousing policy qualifies as a strip search.  Although Fourth Amendment rights are "significantly diminished" in custodial settings, detainees retain a "reasonable expectation of privacy with regard to their own bodies," and a right to be free from unreasonable intrusions into their bodies, such as unreasonable strip searches.  See Allison v. GEO Group, Inc., 611 F. Supp. 2d 433, 443, 446 (E.D. Pa. 2009) (citing Hudson v. Palmer, 468 U.S. 517, 525-28 (1984); Bell v. Wolfish, 441 U.S. 520, 557 (1979)).  According to Black's Law Dictionary, a strip search is "[a] search of a person conducted after that person's clothes have been removed, the purpose usually

---

[6]     Furthermore, Jennings and Grahams' descriptions of the strip search practice prior to March 2008 were substantially similar to the documented policy.  (Jennings Dep. 59:3; Graham Dep. 44:15, 45:4.)

[7]     This finding is for purposes of class certification only. Plaintiff may still pursue an individual claim against Defendant for violations resulting from this alleged strip search.

being to find any contraband the person might be hiding." (8th ed. 2004). Courts use the term
"strip search" to generally describe any inspection of the naked body. See Kelsey v. County of
Schoharie, 567 F.3d 54, 62 (2d Cir. 2009); Wood v. Hancock County Sheriff's Dep't, 354 F.3d
57, 63 (1st Cir. 2003); Peckham v. Wisconsin Dep't of Corr., 141 F.3d 694, 695 (7th Cir. 1998);
Allison, 611 F. Supp. 2d at 453 n.12. A strip search is more intrusive than other intake
procedures at a custodial facility because it involves "exposure of the naked body to scrutiny by
government officers." Allison, 611 F. Supp. 2d at 453. A strip search may require an individual
to "move his body in varying ways to permit a more complete inspection," Kelsey, 567 F.3d at
62, but manipulation is not necessary. See Wood, 354 F.3d at 63 (not requiring a "demand to
open one's mouth or lift one's arms" to find a strip search). However, a strip search does not
include intake procedures "which entail some incidental nudity but [do] not involve visual
inspection of the naked body." See Allison, 611 F. Supp. 2d at 453; Kelsey, 567 F.3d at 63, 65
(finding that "briefly seeing" man's genitals during clothing exchange did not amount to strip
search and noting that individuals "were not required to display or manipulate" their bodies).

     Defendant's delousing procedure "include[s] the essential elements of a strip search"
because it involves a visual inspection of a detainee's naked body. See Doan v. Watson, 168 F.
Supp. 2d 932, 936 (S.D. Ind. 2001). The inmate removes all of his/her clothing and then the
identification officer "perform[s] a visual inspection of the inmate's body to ensure there are no
open wounds or sores." (Policies and Procedures: Delousing of New Commitments ¶ 3.) The
identification officer does not touch the inmate and the inmate is not required to manipulate
his/her body parts, with the exception of raising his/her arms during the procedure. (Graham
Dep. 115:12-14.) However, a strip search does not require touching or intrusion into the person's

body cavities.  See Wood, 354 F.3d at 63.  All that is required is an inspection of an individual's naked body.  See Peckham, 141 F.3d at 695.

Defendant argues that its delousing procedure is not a strip search because it is an intake procedure that involves "incidental nudity but which [does] not involve visual inspection of the body."  (Def.'s Resp. 8.)  However, the delousing policy is distinguishable from intake procedures that involve incidental nudity, such as the clothing exchange at issue in Stanley v. Henson, which Defendant cites.  In Stanley, the detainee was "subjected only to a two-minute observation . . . while she changed her clothes.  She was not required to remove her undergarments, subjected to any inspection of her body cavities . . .."  337 F.3d 961, 966 (7th Cir. 2003).[8]  Defendant's delousing policy specifically requires a visual inspection of the naked body to inspect for wounds and sores, and therefore is considered a strip search.  Whether Defendant's delousing procedure satisfies the Fourth Amendment reasonableness standard in light of its purpose is a question that we do not reach at this stage of the litigation.  We find, therefore, that the delousing procedure qualifies as a strip search, but we emphasize that this finding is relevant only for purposes of class certification, and does not bind the fact-finder on the merits.

Accordingly, in exercising our discretion to modify a class definition, we limit the definition of "strip search" in Plaintiff's proposed class to include only Defendant's delousing policy.  See Rendler, 182 F.R.D. at 160.  We will now examine the elements of Rule 23.

B.   Rule 23(a) Requirements

---

[8]   In Stanley, the Seventh Circuit found that the clothing exchange was a search but that it was reasonable and not a Fourth Amendment violation.  337 F.3d at 964.

1.    <u>Numerosity</u>

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "no minimum number of plaintiffs is required to maintain a suit as a class action," numerosity will generally be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001); <u>see also</u> <u>McDonough</u>, 2009 WL 2055168, at *9. Because all individuals who enter or are transferred to Chester Prison undergo the delousing procedure, all persons who have been detained for "misdemeanors, summary offenses, violations of parole, traffic infractions, civil commitments, or other similar charges and/or crimes" from September 12, 2006 to the present, are members of the proposed class. Plaintiff believes that this number exceeds 5,000 individuals. (Hr'g Tr. 7:10.) Whether Plaintiff's estimate is accurate, the number of individuals detained on misdemeanor charges at Chester Prison between September 12, 2006 and today certainly exceeds 40. Therefore, Plaintiff satisfies numerosity.

2.    <u>Commonality</u>

Commonality requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class . . . it does not require an identity of claims or facts among class members."[9] <u>Johnston v. HBO Film Mgmt. Inc.</u>, 265 F.3d 178, 184 (3d Cir. 2001) (quoting <u>In re Prudential Ins. Co. of Am. Sales Practices</u>

---

[9]    We note that some courts do not discuss commonality when a plaintiff seeks certification under Rule 23(b)(3) because it is "subsumed by the predominance requirement." <u>Danvers Motor Co. v. Ford Motor Co.</u>, 543 F.3d 141, 148 (3d Cir. 2008) (quoting <u>Amchem</u>, 521 U.S. at 627); <u>see also</u> <u>McDonough</u>, 2009 WL 2055168, at *9.

<u>Litig.</u>, 148 F.3d 283, 310 (3d Cir. 1998)).  "Because the requirement may be satisfied by a single

common issue, it is easily met."  <u>Baby Neal</u>, 43 F.3d at 57; <u>see also</u> <u>Newton</u>, 259 F.3d at 183

(explaining that courts set a "low threshold" for satisfying commonality element).

     Plaintiff asserts three common issues shared between Plaintiff and the prospective class:

(1) "did [D]efendant employ a blanket strip search practice during the class period"; (2) "does the

[D]efendant's blanket strip search policy violate the unreasonable search provisions of the United

States Constitution"; and (3) "is [D]efendant directly responsible for these constitutional

violations."[10]  (Pl.'s Mot. Certify Class 13.)  Because this Court finds that delousing qualifies as a

strip search for class certification purposes, Plaintiff has satisfied the commonality element by a

preponderance of the evidence.  Plaintiff has put forth questions of law and fact common to all

class members: whether Defendant employs a blanket strip search policy through its delousing

procedure, whether Defendant's policy violates the Fourth Amendment, and whether Defendant

is responsible for the alleged violations.  <u>See</u> <u>Wilson v. County of Gloucester</u>, 256 F.R.D. 479,

486 (D.N.J. 2009) (certifying class based on common question of "whether requiring newly

admitted pretrial detainees to completely disrobe before a corrections officer during . . .

application of delousing spray violates federal law").

     3.    <u>Typicality</u>

     Typicality requires that the "claims or defenses of the representative parties are typical of

the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality inquiry focuses on

---

[10]     Defendant did not dispute that the common issue in this case is the "alleged
blanket policy of strip searching" individuals detained for misdemeanor or summary offenses.
(Def.'s Resp. 11.)  Defendant is referring to the blanket visual search policy only, and therefore
conceded commonality only with respect to the visual search policy, not the delousing policy.

"whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus

suggesting that the incentives of the plaintiffs are aligned with those of the class." <u>Beck v.

Maximus, Inc.</u>, 457 F.3d 291, 295-96, 300 (3d Cir. 2006) (also explaining that if named plaintiff

is subject to a unique defense that will be significant in litigation, representative is not typical);

<u>see also</u> <u>McDonough</u>, 2009 WL 2055168, at *10.  Like commonality, courts have set a "low

threshold" for satisfying typicality.  <u>See</u> <u>Newton</u>, 259 F.3d at 183.  "If the claims of the named

plaintiffs and putative class members involve the same conduct by the defendant, typicality is

established regardless of factual differences." <u>Id.</u> at 183-84.

Plaintiff alleges that she was subjected to Defendant's delousing policy during intake at

Chester Prison which amounted to an unconstitutional strip search.  Plaintiff's account of her

delousing incident closely resembles the description of the procedure provided in the written

policy and by Officers Jennings and Graham.  Plaintiff's claim is typical of the class because all

individuals who enter Chester Prison, including those detained on misdemeanors or similar

charges, are required to proceed through the delousing procedure and suffer substantially the

same alleged invasion of privacy.  <u>See</u> <u>Bizzarro v. Ocean County</u>, Civ. No. 07-5665, 2009 WL

1617887, at *14 (D.N.J. June 9, 2009).

Defendant argues that Plaintiff has not satisfied the typicality requirement because

Plaintiff's claim that she was strip searched under a blanket policy is not typical of the class since

Defendant did not and does not have a blanket strip search policy.  (Def. Resp. 12.)  Defendant's

argument against typicality, however, is based solely on allegations that Defendant had a visual

14

cavity search policy, and does not address allegations regarding the delousing policy.[11]  Because

Plaintiff has failed to establish that Defendant had a visual cavity search policy, Defendant's

argument against typicality is without merit.  The claims of Plaintiff and potential class members

involve the same delousing practice by Defendant, and therefore, Plaintiff satisfies typicality.

4.    Adequacy

To satisfy the adequacy requirement, the plaintiff must show that the "representative

parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   To

determine whether adequacy has been satisfied, we must examine two factors: "(a) the plaintiff's

attorney must be qualified, experienced, and generally able to conduct the proposed litigation,

and (b) the plaintiff must not have interests antagonistic to those of the class."  New Directions

Treatment Servs. v. City of Reading, 490 F.3d 293, 313 (3d. Cir. 2007).  "A class representative

must be part of the class and suffer the same injury as the class members."  McDonough, 2009

WL 2055168, at *12 (quoting Amchem Prods., 521 U.S. at 625-26).

Defendant does not contest the adequacy of the class attorney, but Defendant asserts that

Plaintiff is not an appropriate class representative.  In particular, Defendant argues that Plaintiff

is not familiar with the allegations in the Complaint or relevant documents turned over by

Defendant, including the Incident Report,  (Hr'g Tr. 21:15-25) and that Plaintiff was not strip

searched, only deloused,  (Hr'g Tr. 21:10).  These concerns do not demonstrate that Plaintiff's

interests will be antagonistic to the interests of the proposed class members.   First, the

---

[11]      In fact, Defendant states that Plaintiff's testimony regarding her intake is
"consistent only with a de-lousing procedure."  (Def. Resp. 12.)  This statement implies that
Defendant would concede that typicality is satisfied with regard to the delousing policy.

inaccuracies raised through Plaintiff's testimony may be relevant when this case proceeds to the

next phase of litigation, but factual inconsistency and unfamiliarity do not show that Plaintiff is

an inadequate representative.  See In re Fleetboston Fin. Corp. Secs. Litig., Civ. No. 02-4561,

2005 WL 3579050, at * 4 (D.N.J. Dec. 28, 2005) (refusing to deny certification based on the fact

that named plaintiff was not familiar with every fact of the case).  Second, Defendant's argument

that Plaintiff was not strip searched, only deloused, supports a finding of adequacy.  Plaintiff is

part of the proposed class, and Plaintiff suffered the same injuries as the putative class members.

Accordingly, Plaintiff satisfies the adequacy inquiry.

Because Plaintiff has satisfied the requirements of Rule 23(a) by a preponderance of the

evidence, we must now review whether Plaintiff's class is maintainable under any one of the

three provisions of Rule 23(b).  Plaintiff seeks certification under Rules 23(b)(2) and 23(b)(3).

C.      Rule 23(b)(2) Requirements

Certification is proper under Rule 23(b)(2) where "the party opposing the class has acted

or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."  Fed R. Civ. P.

23(b)(2).  Rule 23(b)(2) is "limited to those class actions seeking primarily injunctive or

corresponding declaratory relief."  Barnes v. American Tobacco Co., 161 F.3d 127, 142 (3d. Cir.

1998).  The Third Circuit has not yet decided how to determine whether the relief plaintiff seeks

is "primarily" injunctive or declaratory relief when a plaintiff seeks both damages and injunctive

or declaratory relief.  Hohider v. United Parcel Servs., Inc., 574 F.3d 169, 198 (3d Cir. 2009).

District courts in this Circuit have followed the standard set forth in Allison v. Citgo Petroleum

Co., 151 F.3d 402 (5th Cir. 1998).  Gaston v. Exelon Corp., 247 F.R.D. 75, 87 (E.D. Pa. 2007);

Miller v. Hygrade Food Prods. Corp., 198 F.R.D. 638, 641 (E.D. Pa. 2001); see also Hohider,

574 F.3d at 202 (approving Allison).  We choose to apply the Allison standard here.

When a plaintiff seeks both damages and injunctive or declaratory relief, we may only

certify a class under subsection (b)(2) if the damages claim is "incidental to the primary claim for

injunctive or declaratory relief."  Allison, 151 F.3d at 415; see also Barabin v. Aramark Corp.,

Civ. No. 02-8057, 2003 WL 355417, at *1-2 (3d Cir. Nov. 12, 2003).  Incidental damages are

those that "flow directly from liability to the class as a whole on the claims forming the basis of

the injunctive or declaratory relief."  Allison, 151 F.3d at 415.  Three factors to consider when

deciding if damages are incidental are: "(1) whether such damages are of a kind to which class

members would be automatically entitled; (2) whether such damages can be computed by

objective standards and not standards reliant upon the intangible, subjective differences of each

class member's circumstances; and (3) whether such damages would require additional hearings

to determine."  Id.  Courts are careful when making this inquiry because class actions under Rule

23(b)(2) are binding on all class members without providing notice or the opportunity to opt out.

See Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1569 (3d Cir. 1994).

Plaintiff seeks compensatory and punitive damages for herself and each member of the

proposed class, as well as a declaratory judgment and injunctive relief.  (Compl. Prayer for Relief

¶ 2, 3.)  Defendant alleges that certification is not proper under subsection (b)(2) because

determining whether to grant damages requires an individual showing of harm, not merely a

finding that an unconstitutional policy exists, which will require subjective evaluations and

additional hearings before this Court.  (Hr'g Tr. 24-25.)  We agree with Defendant's concerns

and find that the damages sought are not incidental to the equitable relief sought in this case.

Even if we find that Defendant's delousing policy is facially unconstitutional, individual

inquiries and subjective standards will be necessary to determine whether each class member was

injured by the policy and the damages that he/she sustained.  See Wilson, 256 F.R.D. at 491 n.19.

Therefore, we will not maintain this class under Rule 23(b)(2).

      D.    <u>Rule 23(b)(3) Requirements</u>

Although this class cannot be certified under Rule 23(b)(2), we find that it can be

maintained under Rule 23(b)(3).  Certification under subsection (b)(3) is proper where "the court

finds that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These two

requirements are known as predominance and superiority.  Unlike Rule 23(b)(2), Rule 23(b)(3)

requires that putative class members are notified and given the right to opt-out.  See Beck, 457

F.3d at 302.

      1.    <u>Predominance</u>

"Predominance tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  In re Hydrogen Peroxide, 552 F.3d at 310-311 (quoting

Amchem, 521 U.S. at 623).  Predominance is "far more demanding" than commonality because

it requires "more than a common claim."  Id. (quoting Amchem, 521 U.S. at 623).  "Issues

common to the class must predominate over individual issues."  Id. at 311 (internal quotations

omitted).  The nature of the evidence determines whether an issue is common or individual, and

18

thus a "district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate." Id.  At the class certification stage, a plaintiff must demonstrate that the elements of its claim are "capable of proof at trial through evidence that is common to the class rather than individual to its members." Id. (citing Newton, 259 F.3d at 172).  In deciding this issue, a district court must conduct a "rigorous assessment of the available evidence."  Id. at 312.

Plaintiff has brought a class action under 42 U.S.C. § 1983 alleging that Defendant's policy of conducting strip searches upon entry into Chester Prison violates the Fourth Amendment.  "The Fourth Amendment prohibits only unreasonable searches."  Bell v. Wolfish, 441 U.S. 520, 558 (1979).  At the merits stage, Plaintiff will have to prove that she was the subject of a search and that the search was unreasonable.[12]  See Wilson, 256 F.R.D. at 488. Because Plaintiff's alleged strip search, the delousing procedure, was in accordance with a policy promulgated by Defendant, Plaintiff will be able to show that she was searched through common rather than individual evidence.  See Bizzarro, 2009 WL 1617887, at *15 (finding that common issues predominate because challenges to a policy of suspicionless searches turn on generalized, not individualized proof).  Similarly, whether the search was unreasonable can be proven through common evidence because the alleged intrusion of privacy and Defendant's interests in performing the delousing procedure are substantially the same for all class members.  See Wilson, 256 F.R.D. at 488.  Therefore, we find that predominance is satisfied.

Defendant argues that the predominance requirement is not met because individual

---

[12]     Under 42 U.S.C. § 1983, Plaintiff must also prove that Defendant is a state actor.

19

questions regarding each intake and strip search will outweigh the common issues.  Defendant's

assertions are in regard to Plaintiff's allegation that she was subject to a visual strip search and do

not concern the delousing process.  As such, Defendant's arguments are without merit.

Moreover, given that Defendant admits to having a uniform delousing policy, it is difficult to

argue that common issues do not predominate over individual questions.

> 2.    Superiority

 "The superiority inquiry requires us to "balance, in terms of fairness and efficiency, the

merits of a class action against those of alternative available methods of adjudication."  Danvers

Motor Co. v. Ford Motor Co., 543 F.3d 141, 149 (3d Cir. 2008) (internal quotations omitted).

Rule 23 provides a non-exhaustive list of factors to consider in this inquiry: "the class members'

interests in individually controlling the prosecution or defense of separate actions; the extent and

nature of any litigation concerning the controversy already begun by or against class members;

the desirability or undesirability of concentrating the litigation of the claims in the particular

forum; and the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A-D).

In this case, all four factors support a finding that class certification is the superior

method to adjudicate Plaintiff's claim.  As an initial matter, "where the plaintiff's claims attack

the same course of defendant['s] conduct, proceeding as a class action is far superior to allowing

piecemeal litigation of the exact same claims."  Stanford, 2009 WL 3075390, at *16 n.22.  First,

as Plaintiff argues, putative class members would likely have little interest in pursuing individual

claims against Defendant.  "It is generally recognized that class certification is preferred where

'the recovery being sought by each of the plaintiffs is not sufficiently large to render

individualized litigation a realistic possibility." Bizzarro, 2009 WL 1617887, at *17; see also

Amchem Prods. Inc., 521 U.S. at 617(explaining that the Advisory Committee had in mind

"vindication of the rights of groups of people who individually would be without effective

strength to bring their opponents into court at all").  Other courts have concluded in similar "strip

search policy" cases that recovery by each putative class member would likely be small, and that

each member would have little incentive to pursue its claims individually, and we agree in this

case.  See Bizzarro, 2009 WL 1617887, at *17; Wilson, 256 F.R.D. at 490.  Second, we have not

found and the parties have not asserted that any other litigation against Defendant for its

delousing policy has commenced.  Third, we have concluded that common issues predominate

this litigation, and as a result, "interests of economy and efficiency render class certification

desirable."  Wilson, 256 F.R.D. at 490.  And, with respect to the fourth factor, we do not find any

practical difficulties in managing this class action.

Defendant argues that the superiority requirement is not satisfied here because the

putative class members' allegations regarding the strip searches requires an evaluation of each

individual intake.  (Def. Resp. 16.)  Defendant's concerns are in regard to class certification

based primarily on allegations of visual cavity strip searches.  An examination of Defendant's

delousing policy will not require such an inquiry, as Defendant had a uniform policy which all

putative class members were subject to.  Thus, proceeding as a class action is the superior

method of litigation.

IV.    CONCLUSION

Accordingly, Plaintiff's motion to certify the class is granted.